237563 United States v. Adebayo, Ilori. May it please the Court, Robert, excuse me, Robert Culp assigned counsel for Appellant Adebayo, Ilori. In a criminal case with Defendant's Liberty on the line, the District Court conducted a secret court proceeding that excluded the defendant, but where his own lawyer made a baseless claim that he feared that his client might haul off and punch him in front of the jury, leading to additional court security and a physical separation of lawyer from client, and where the court announced that even before these measures were taken, a juror had asked about the people in suits behind the defendant. Despite clear precedent requiring proper due process procedures, no inquiry was made into the obvious conflict between a defendant and his own lawyer suggesting he planned an attack on client. Sorry, I said it right the first time. No hearing was held to allow defendant to respond to the baseless charge and make a proper record of the security changes made in front of the jury, and no inquiry was made into the report that a juror had already asked about the security measures. With Mr. Ilori absent from the courtroom, his constitutional rights to counsel, the presumption of innocence and to be present for court proceedings was serially violated. Astonishingly, Mr. Ilori was not only excluded from this proceeding, he was never even told about it until after the trial. I'm sorry. Yeah, no, no. So you were describing an inquiry about security measures. Yeah. And there's a leap there, right? The question is, who are the people in suits? And the answer is sort of this vague part of the team. How is that a discussion about security measures? Are we supposed to infer that the juror thought that those were security people and that the answer validated that? Or how does that... Yeah, I think you have to draw that conclusion. Why would a juror ask about who are the guys in suits behind the defendant to begin with? And one thing you have to remember is that before this extraordinary hearing that I'm talking about, the lawyer conceded that he had previously asked the marshals about his concern about his client. So these may have been creeping procedures for all we know. And when a juror is asking the court about something, and especially in this context, when we have lots of other information that tells us what this juror was seeing in the courtroom, don't forget there was also a newspaper article about the marshals sitting behind Mr. Ilori. I think you've got to have a hearing. You've got to do what the law says, what this court has said to do in Meta and Collins and similar cases. And I take it on that claim we're in plain error. The court did disclose this and counsel didn't say, oh, we want to have a hearing on that. Am I right about that? I guess so. I mean, was he supposed to object to what he was doing? It seems very unfair to me. I wish I could have found a case on relaxed plain error when the defendant's not even there. But I guess we are... But we usually treat defense counsel as a proxy. I mean, unless we're in the ineffective assistance of counsel realm. But here, for purposes of direct appeal, isn't counsel's failure to object, isn't that what gets us to plain error, not some... I mean... Yeah, apparently so. I tried to find... I mean, to me it's strange because I think there's a conflict here. I know the government has an argument that this is not a conflict where a lawyer's accusing his client of possibly, I know it wasn't a guaranteed, but possibly attacking him. I think that's a conflict. And I don't know how you can expect a defense attorney to properly represent his client in that situation. There's a failure to object to the court's failure to inquire of the juror, right? So I think that's the error we're talking about potentially being on plain error, right? But we also have... So you've had a hard time, I think, articulating necessarily the sort of confluence of error. We do this with witnesses, right? If there are five witnesses that are excluded, you can argue, hey, it's the collective effect of those exclusions. And I think that's sort of what you're saying here, that there's a sort of cumulative effect of these various errors. But what about the other errors? So, for example, if Mr. Lurie... potential conflict his lawyer has, right? Nobody tells him. Is that right? Didn't learn about it until after the trial. Right. So the only person who could have objected to the failure to inform him is him, right? In that circumstance, it makes no sense to do what we normally do and attribute the failure to object to the defendant where counsel fails. Because counsel, the government, and the judge know about the potential conflict because they know that counsel... So the only person who doesn't know is Mr. Lurie. He's the only one who would have been able to object. He's downstairs in the pen. Right. So what I'm trying to get to is the question of, are you saying that plain error applies to all of these potential errors or only to potentially to the error of failure to inquire of the jury? I don't think you should have to meet that standard as to any of those errors. I know, but I'm asking you to differentiate because you just conceded you couldn't find any case law supporting the idea that it wasn't plain error to fail to object through counsel to the failure to inquire of the juror. So let's talk about the other errors. Failure to inform Mr. Lurie of the potential conflict. Failure to inquire into the potential conflict. Failure to give Mr. Lurie his right to be present for trial. As to those errors, how do we deal with the plain error question when the lawyer is part of the problem? I guess you have to do the plain error analysis, but I think it should be some kind of relaxation. You do this in sentencing cases, and this is like an extraordinary situation. Right. And, okay, well, for the record, we don't have to agree it's plain error, even if you conceded, but I'm trying to understand how... No, no, I'm not saying... You just said, I guess we have to apply plain error. I'm asking you, as to the argument that Mr. Lurie was illegally excluded from his own trial proceedings, right, who could object to that other than Mr. Lurie?  When his lawyer is the one who is initiating the sealed ex parte proceedings. So how did he have, the sort of standard for plain error is, if you had a meaningful opportunity to object and you failed to do so, we're going to, you know, we're going to review that more harshly. So what opportunity did Mr. Lurie have to object? He didn't. He didn't. But as you both have pointed out, his lawyer was there. His lawyer, I suppose the government's going to say his lawyer should have... Well, don't argue for the government. You've only got to argue for Mr. Lurie. So let's hear the argument that it shouldn't apply. Is there an argument that plain error should not apply? I think the best argument for that is that it's kind of a structural error, that there's a complete absence of counsel. There's an absence of representation of this man. And especially with respect to the, I mean, the standard on failure to be present is only whether you could assist. That's all you have to show is whether you could assist in an important proceeding in your criminal case. Well, he wasn't even there to give any assistance. So I think it should be deemed to have been met by that alone, without regard to strength of the trial evidence or anything like that. So can I ask a question about... So even on the conflict claim, right? One of the questions is, should the court have inquired? And then at least as I read the case law, you still have to sort of determine that there's some evidence that the lawyer's conduct of the trial reflected that conflict, right? That the lawyer did something that fell short. Right. And so you have that piece and then you have your sort of... It's not, you haven't framed it as a distinct argument, but it's sort of a thread moving through all of them. And his communications with his lawyer were impaired by that distance. We're on direct appeal. And one of the things I'm wondering about is, if we're trying to figure out whether there was harm to his representation, we're limited to the record that we have on direct appeal. Is there a danger that if we reach those issues now, there may be post-conviction relief that we're undermining? Is there other evidence, I guess, that might come to bear if these issues were addressed in a different posture? Or is it likely that the evidence that exists is the evidence that we have in the record? It's a difficult situation and there is more that's not in the record. I've alluded to some things, like for example, the fact that Mr. Lurie didn't know about this until after the trial. That's technically not in the record, but I've told you this because it's our position. But I have not, deliberately not made a 2255-style ineffective assistance of counsel argument, because I think if it gets to that someday, there is going to be more evidence to be brought to bear on this situation. Absolutely. But I think we have enough now to order a new trial. This was an egregious violation of Mr. Lurie's rights. And I was expecting the court to ask a different question as whether there should be some kind of reconstruction hearing or something like that. Let's find out what actually happened in that courtroom. Let's find out what the juror said to the courtroom deputy and what the courtroom deputy said to the judge and sort of let's figure it all out. But that trial took place in 2022. It's been a long time. And I honestly think that the right remedy here is simply to remand for a new trial. It's what happened in the Meda case. I was part of that appeal, too. And it is what happened in that case. They ordered a retrial in that case, and I think that's what happened here. And respectfully, I think the appearance here is such that whether regardless of what kind of remand takes place, respectfully, I think it should go to a different judge. OK. Thank you. And we'll hear from you again, Attorney General. Good morning, Your Honors. May it please the court. My name is David Felton. I represent the United States on this appeal, and I was counsel to the United States in the proceedings below. Your Honors, the judgment of conviction should be affirmed. There was no error in the district court's handling of the proceedings below. And the sentence was supported by the record and was substantively reasonable. So it's not just that you argue it's harmless or it doesn't meet the standard. You argue that that sidebar with Mr. Ellory not knowing that his lawyer has told now the prosecutor and the judge that even though he has no basis for it, his client might punch him in the head. That excluding Mr. Ellory from that proceeding entirely and then not informing him of any of that, that that is not error. Not just that it's harmless. You're actually saying that it's not error. Your Honor, it was not error. The defense counsel asked for a sidebar to raise a brief security issue with the court. And he was clear. He said, look, I don't know for sure that this will happen. I just wanted to note that from my perspective, having represented him, the original adjournment of the trial appeared to be a delay tactic. And this is now, we were supposed to sum up that it was the last day of a hotly contested trial, that this appears to be a delay tactic. And so there are not many potential moves left. And so in order to preserve the proceedings and to be in position for the jury to receive the case, that I think reasonable, tailored, narrow security measures would be appropriate. I know. I read the transcript. What I'm asking is, do you, is the government's position that it was not error to exclude Mr. Eluri from that, to withhold the information from him about the juror inquiry, about his lawyer's request, that withholding that information from him was not error? Your Honor, on the jury inquiry, on the Mejia case, it's noted that an ex parte inquiry from a judge to the jury, it may be harmless where there is no prejudice. But harmless is different. I am trying to get you, I'm trying to pin you down. Whether you're arguing that it's not enough to show that there was prejudice or that it's harmless, as opposed to, it was actually not error for a district judge, a prosecutor, and an appointed counsel to collectively discuss the course of this man's trial and to withhold the information from him that they all had and shared. Your Honor, understood. In hindsight, sitting here today, that decision for the defendant not to be there for that part of the discussion may have been error, Your Honor. I will note that. But at the time in the fast-moving proceedings in the district court, I thought the district court actually did an admirable job of stage management, given what we had here on the last day of trial. The courtroom deputy responded, I think, I don't think could have given a less prejudicial response to the jury inquiry. And then the courtroom deputy did what she was supposed to. She informed the district judge, who then informed the parties. Defense counsel was aware. Defense counsel was told about the juror note and rightfully did not object. It wasn't a note, right? It was a verbal inquiry? Apologies. The verbal inquiry to the CRD. Right. Exactly. And so at that point, defense counsel was aware. So defendant was made aware. And that was not error because defense counsel was made aware of that. And so in that circumstance, that was not error. So where defense counsel is affirmatively requesting additional security measures, is it reasonable to believe defense counsel would act on behalf of a client to object, to further inquire whether the existing security measures were already prejudicial? It's hard to picture. I don't think it's clear that the question was a security question. The question was just, who are the men in suits? And we know from Holbrook and from Anthony M, where you have four uniformed guards and five armed guards in those cases, which had been appropriate in those circumstances. Here, it was what we have, Your Honor, in every single criminal trial with a detained defendant. We had two plainclothes individuals behind the defendant. And they're the only ones sitting in the first row of pews in front of the bar, usually, right? I mean, every courtroom is different. But in my courtroom, there was a pew in front of the bar or chairs in front of the bar, and then the counsel tables. The only people who sat in front of the bar were security and the people at counsel table, right? Yes, Your Honor, that's correct. And those two fellows in suits, I'm going to say they were fellows. Those two marshals in suits never took the stand, so they weren't witnesses. They weren't conferring with the defendant, so they weren't trial team, right? They mentioned that they were part of the team. And it's not, the record doesn't make clear that it was a security question. But that is the norm, and that is, you know, under Holbrook and this court's precedence, that is common in this district and I think appropriate. And here, it was a targeted proportional request, and I believe a targeted proportional response for one added plainclothes official, and then the defendant was sat one chair length away from his attorney. And from that point on, that was Thursday. And that was a shift, right? So this is the last day of evidence or the day of closing and charge? So it was supposed to be the day of closing and charge, but because this proceeding, it ended up getting kicked till Monday. But after this proceeding, defense counsel below vigorously, zealously, and effectively represented his client. So throughout the trial, counsel had been in the seat directly next to his client. When it came time for closing and charge, the defense counsel was separated from his client by a chair? Yes, Your Honor. And that doesn't strike you as potentially raising a red flag for the jury? I think it was amazing what they noticed, right? Your Honor, I think given that jurors had, that one juror had made the inquiry earlier and no subsequent notes or inquiries were made, I think there's no basis in the record to infer that the jury inferred anything. And I think it was a fairly narrow, properly tailored remedy, especially given what this Court has affirmed in other cases. And I think the record bears out in terms of any potential ineffectiveness. Judge Viscosa was clear numerous times that counsel had been effective. And certainly, nothing in the record indicates he wasn't. He zealously cross-examined the witnesses following this point. He gave a vigorous summation that attempted to show that Mr. Recamier was more culpable and really was involved. I thought defense counsel Blow did an admirable job with a very difficult record. Well, except that he went to sidebar with you and with the judge and said that his client was engaging in dilatory tactics and might punch him in the head. Your Honor, respectfully, he said, look, I don't know what's going to happen. I'm raising this for the Court's consideration. And the district court, who had been observing the pretrial proceedings and the trial, said, agreed with it. This was a district judge who has some leeway to manage. I understand. I'm saying, I do think there's a difference between saying, allowing the district judge to believe that your client is being dilatory and affirmatively requesting a conference at which you say, clearly, he's just trying to delay things. I guess all of that, from the defense's perspective, the argument, I think, is that it all infects this, right? That we should be concerned about the failure to adequately involve Mr. O'Loury, not just because it's a short period of time when he's deprived of his right to presence, but because the person who we've entrusted with acting on his behalf is not necessarily appearing to do that. Your Honor, I would note just that the John Doe case, I think, is on all fours here, where it notes that any threats made by a defendant would cause the defense attorney to actually do his best to obtain an acquittal. I'm not worried about the threat. I want to be clear. And I've sat in that seat. And I've been threatened. I'm not worried about the threat. I'm worried about the fact that it is the attorney who invents the threat, who says, there has been no threat. But I think you should sua sponte, take these actions, based on literally nothing. He says, I have no basis for this. And so my point is simply that there is, and I think the defense counsel really struggled in his briefing to find a way to say this, but shouldn't we worry about the confluence and cumulative effect of this problem? Respectfully, I hear you, Your Honor. I don't think this court should. I think what we had here was, I think the defense counsel below raised this in a targeted way and left it to the judge. And the judge said that I think it was obvious that this was a delay tactic. And at that point, there really weren't many more alternatives for a potential delay. And the defense counsel below didn't say, look, I know 100% he's going to do it. He said, look, I fear, given the increasing desperation, and I even consulted with the marshals before I came up here, this was clearly on his mind. And the judge, having heard that and having observed the defendant in the courtroom and observed the proceedings, found that it was reasonable to take a narrow step, one more official wearing a suit behind the defendant and one chair of distance between the two from that point forward. Respectfully, Your Honor, I don't view this as the sort of error that so infects the proceedings. Was the one more person in a suit behind the defendant? I thought that the additional security was another court security officer in the back of the courtroom. Was there also another individual right behind the counsel table? Your Honor, my memory, having been there below, was that it was one more official in a suit with the two suited officials behind the defendant. There was a discussion, too, when the jury's going to deliberate, you'll have a uniformed official in the back of the courtroom. But the step that was taken below was one more suited official behind the defendant. Your Honor, if the court has any more questions, I'm happy to answer. Otherwise, we respectfully submit that the judgment should be affirmed. Thank you. Thank you. Attorney Cohen. Respectfully, I get that he was there. I wasn't there. You weren't there. We don't know that it was just one more person in a suit. This is what the point of having sort of a proper hearing is, to describe these things. And when you read that discussion, it's hard to tell. Are they talking about one person? Are they talking about two people? And as I mentioned earlier, there was some sort of subtle movement in the direction of increased security. Otherwise, why is the juror asking, and why is the newspaper article asking, who are these people? I'm confused about timing. I thought the juror inquiry preceded any of these heightened steps, because it was the sidebar where there was a conference where the court made the determination to take these additional steps. And at the end of that, the court said, oh, yeah. And a juror made this inquiry. So that inquiry would have had to have not related to any change in security. Am I misunderstanding the timing? But you've got to remember that, yes, it did happen before this proceeding that I'm complaining so vociferously about. But what I'm saying is that I think that the security was increasing already. Because remember, the defense counsel says, oh, I already spoke to the marshals about this. There's something going on. And the judge mentions the newspaper article as if, oh, yeah, the newspaper article talks about the marshals, as if there's been a prior discussion. But I don't see it. So and Mr. Lurie's position is that this started before the secret proceeding. Now, that's not in the record. I want to be clear about that. But that is his position, that it started before this happened. It got worse. This is why you have to have a hearing to determine these things. And then counsel said there's no basis in the record to assume anything about the juror note and so forth. Well, it's easy for him to say that now. But when you violate the instruction of the Mehta and the Collins cases to say that you have to put the juror inquiry into writing and you have to allow an opportunity for counsel, who's, as you've pointed out, is failing his client anyway, to make proper recommendations, we don't know if that juror was speaking on behalf of other jurors. We don't know if that juror went back and spoke to other jurors. We don't know if the courtroom deputy spoke first to the judge and then gave the answer. We don't know any of these things because they just let it slide through. And this lawyer who wasn't protecting his client was failing him. And just to get back to something you asked me earlier, Judge Robinson, and I think I got sidetracked a little bit. I mean, the underlying problem here between these two people is they weren't communicating, the lawyer and the client. When Mr. Laurie got up, and I fully understand the frustration of people during trials asking for new lawyers. I get it. When he got up, his lawyer said, I don't even know what he wants to say. These people aren't talking. And what came out of that conversation is to separate them further. And I hear this all the time, how wonderful the defense counsel are when coming from prosecutors. It's always after the trial. Wonderful there. But he gave a very minimal summation. The government counsel, like 44 pages between the two of them of summation, 10 pages, he missed things. He missed things that I had to put in my brief, like handwriting that was clearly the handwriting of the co-defendant, not him. And things that would have shifted, which was the defense strategy, shifted blame onto the co-defendant. He didn't even make up the arguments and so forth. So anyway, I rambled. I do apologize. Appreciate it. Thank you. Thank you very much. Thank you both. We will take this under advisement.